**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| HASSAN ALI DAHIR,<br><br>                         Plaintiff,<br><br>vs.<br><br>FIRST ADVANTAGE BACKGROUND SOLUTIONS CORP.,<br><br>                         Defendant. | Civil Action No.:<br><br>**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT AND DEMAND FOR JURY TRIAL** |

Hassan Ali Dahir ("Plaintiff" or "Mr. Dahir") by and through his counsel brings the following Complaint against First Advantage Background Solutions Corp., ("Defendant" or "First Advantage") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report wherein Defendant published inaccurate information to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted felon.

### INTRODUCTION

1. This is an individual action for damages costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of **felony** aggravated robbery, **felony** aiding and abetting aggravated robbery, and **felony**

1

"prohibited persons in possession of a firearm" (the felonies collectively referred to as the "Felony Convictions").

4. Defendant's reporting is grossly inaccurate and untrue.

5. Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate felony convictions, which do not belong to Plaintiff.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Hennepin County, Minnesota regarding the Felony Convictions prior to publishing Plaintiff's report to his prospective employer.

7. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their middle name and even resides in a different part of the country from Plaintiff.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers.

9. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

10. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

11. Defendant's inaccurate report unnecessarily denied and delayed Plaintiff's employment, thereby causing Plaintiff the loss of income and other work-related benefits attendant

to that position and caused Plaintiff to worry about his job prospects and financial health in the interim.

12. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, delay of employment, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

**PARTIES**

14. Hassan Ali Dahir ("Plaintiff" or "Mr. Dahir") is a natural person residing in Columbus, Ohio and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15. Defendant First Advantage Background Services Corp. ("Defendant" or "FADV") is a Florida corporation doing business throughout the United States, including the State of Ohio and in this District, and has a principal place of business located at 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia, 30328. First Advantage can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

16. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such

as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

17. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20. Enacted in 1970, the FCRA's passage was driven in party by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

4

22. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

24. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting; it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

25. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

26. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

27. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

31. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

32. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

33. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

34. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://fiels.consumerfinance.gov/f/documents/201909_cfpb_market-snapsho-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

36. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting felony convictions that belong to an unrelated consumer who has a different middle name and date of birth than Plaintiff.

40. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA") as well as the National Association of Professional Background Screening Association ("NPBSA"). PBSA and NPBSA host a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### A. Plaintiff Applies for a Job with Landair Transport, Inc.

41. In or around July 2022, Plaintiff applied to Landair Transport, Inc. ("Landair") for full-time employment driving semi-trailer trucks.

42. Upon applying to Landair, Plaintiff successfully completed an interview and appeared to meet all other hiring criteria.

7

43. Shortly thereafter, Landair extended a job offer to Plaintiff for the semi-trailer truck driver position, and informed Plaintiff of a tentative start date of July 27, 2022. The job offer was conditioned upon Plaintiff successfully passing a background check ("employment report").

**B. Defendant Published an Inaccurate Background Check Report to Landair**

44. Landair contracted with Defendant to conduct background checks, including criminal background checks, concerning its prospective employees.

45. Therefore, sometime after it had received Plaintiff's employment application, Landair ordered a criminal background check regarding Plaintiff from Defendant.

46. Soon after, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Landair.

47. Within that employment report, Defendant published inaccurate information about Plaintiff.

48. Specifically, Defendant's employment report about Plaintiff included **three** grossly inaccurate and stigmatizing **felony** convictions, occurring in Hennepin County, Minnesota, which appeared in the employment report as follows (partially redacted):

| | | | |
|---|---|---|---|
| Case Reference# | 27-CR-07-039168 | Case Date | 12/16/2003 |
| Name on File | DAHIR, HASSAN AHMED | | |
| Address on File | 1045 7TH ST N, MPLS, MN 55411 | | |
| DOB on File | ███████ | | |
| | | | |
| Charge | AGGRAVATED ROBBERY 1ST DEGREE | | |
| Charge Type | FELONY | | |
| Disposition | GUILTY | Date | 02/19/2004 |
| Sentence | CORRECTIONAL FACILITY 48 MONTHS STAYED FOR 71 MONTHS; PROBATION 06/15/2007-01/01/2010 WITH CONDITIONS; RESTITUTION; PROBATION VIOLATION 06/13/2007 STAYED TIME REVOKED; 48 MONTHS CORRECTIONAL FACILITY SERVE, 999 DAYS CREDIT SERVED | | |

| | | | |
|---|---|---|---|
| Case Reference# | 27-CR-07-100081 | Case Date | 07/14/2007 |
| Name on File | DAHIR, HASSAN AHMED | | |
| Address on File | 1045 7TH ST N, MPLS, MN 55411 | | |
| DOB on File | ███████ | | |
| | | | |
| Charge | AID AND ABET AGGRAVATED ROBBERY 1ST DEGREE | | |
| Charge Type | FELONY | | |
| Disposition | GUILTY | Date | 12/06/2007 |
| Sentence | CORRECTIONAL FACILITY 48 MONTHS SERVE, 149 DAYS CREDIT SERVED | | |
| | | | |
| Charge | PROHIBITED PERSONS IN POSSESSION OF A FIREARM | | |
| Charge Type | FELONY | | |
| Disposition | GUILTY | Date | 12/06/2007 |
| Sentence | CONCURRENT WITH COUNT 1 | | |

| | | | |
|---|---|---|---|
| Case Reference# | 27-CR-12-40093 | Case Date | 12/06/2012 |
| Name on File | DAHIR, HASSAN AHMED | | |
| Address on File | 1045 7TH ST N, MPLS, MN 55411 | | |
| DOB on File | ███████ | | |

49. The criminal convictions – the Felony Convictions – published by Defendant about Plaintiff to Landair *do not* belong to Plaintiff.

50. Plaintiff has never been charged with or convicted of any of the Felony Convictions.

51. A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated man, Hassan *Ahmed* Dahir ("Convicted Felon Dahir").

9

52. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the **three** Felony Convictions, it would have noted the obvious discrepancies between Convicted Felon Dahir and Plaintiff.

53. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Dahir include the following:

    (a) Plaintiff's legal name is "Hassan *Ali* Dahir," and the criminal records belong to one "Hassan *Ahmed* Dahir," which fact is both clearly indicated on the face of the employment report and in the widely available public records from Hennepin County, Minnesota;

    (b) Plaintiff resides in Ohio, and has previously resided in Utah, yet the underlying public court records regarding the criminal records indicate that Convicted Felon Dahir resided in Minneapolis, Minnesota at the time he committed the offenses; Plaintiff has never even been to Minnesota; and,

54. The sole reason the inaccurate Felony Convictions were published by Defendant as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

55. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing Felony Convictions belong to an unrelated individual with a different middle name than Plaintiff, a different Social Security Number, and who resides in a different part of the country than Plaintiff.

56. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant

failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### C. Landair Denies Plaintiff's Job Application

57. Sometime prior to July 27, 2022, but after Defendant sold and published inaccurate information about Plaintiff to Landair, Landair notified Plaintiff that his employment application was denied as a direct result of the Felony Convictions reported by Defendant.

58. Shortly thereafter, Plaintiff obtained a document that appeared to be a copy of the subject employment report and was shocked, distressed, and humiliated upon reviewing and realizing that the serious criminal convictions of another, namely Convicted Felon Dahir, were published in the employment report Defendant sold about Plaintiff to Landair.

59. Plaintiff contacted Landair and informed them that he has never lived in Minnesota, that he is not Convicted Felon Dahir, that his middle name is *Ali* not *Ahmed*, and that he has a different social security number than that of Convicted Felon Dahir. Plaintiff explained that the serious criminal convictions of Convicted Felon Dahir do not belong to him.

60. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Dahir's serious criminal convictions reported on the subject employment report – specifically, the impact of the same on his future.

61. Specifically, Defendant matched Plaintiff and Convicted Felon Dahir and published the criminal records of Convicted Felon Dahir onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer.

62. The exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to Landair, but Defendant failed to perform even a cursory review of such information.

11

### D. Plaintiff Disputed the Misinformation in Defendant's Employment Report

63. On July 22, 2022, desperate to secure employment with Landair and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant.

64. Landair had advised Plaintiff that the producer and provider of the background report was FADV. Therefore, Plaintiff searched online for FADV's contact information.

65. Plaintiff found FADV's contact information and called FADV by phone. Plaintiff identified himself and provided information to Defendant to support his dispute.

66. On the phone, Plaintiff specifically disputed the criminal records of Convicted Felon Dahir.

67. On the phone, Plaintiff specifically stated that the criminal records of Convicted Felon Dahir do not belong to Plaintiff.

68. Plaintiff specifically asked Defendant to investigate and delete Convicted Felon Dahir's criminal records from any employment report about Plaintiff.

69. Sometime in August or September of 2022, FADV finally corrected its reporting, and Landair received a corrected employment report from FADV.

70. After Landair received a corrected employment report from FADV, Plaintiff was able to begin employment on or about September 10, 2022.

71. Defendant's false report delayed Plaintiff's employment with Landair for a time-period of approximately 45 days.

72. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek employment, Plaintiff was unemployed for approximately 45 days, from July 27, 2022, until on or about September 10, 2022.

73. Since on or about September 10, 2022, Plaintiff works approximately 70 hours per week for Landair, for which he earns approximately $1,200 dollars per week.

74. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

75. As a result of Defendant's violations of the FCRA, Plaintiff fell behind on his rental payments.

76. As a result of Defendant's violations of the FCRA, Plaintiff accumulated credit card debt.

77. As a result of Defendant's violations of the FCRA, Plaintiff was forced to borrow money from friends and family, to survive.

78. Upon information and belief, in or around July and August of 2022, FADV has also published employment reports to two other trucking companies: Swift Transportation ("Swift") and Knight Transportation ("Knight").

79. After being unable to successfully pass the background check conducted by Landair, as iterated hereinabove, Plaintiff applied to Swift, and then to Knight.

80. Both Swift and Knight denied Plaintiff's employment applications based on employment reports that included the Felony Convictions.

81. Upon information and belief, both Swift and Knight, in denying Plaintiff's employment applications, obtained and reviewed employment reports provided by FADV, which also included the Felony Convictions.

82. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

83. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

84. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

85. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

86. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

87. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

88. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, delay of employment, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep; loss of

capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

89. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

90. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **DEMAND FOR JURY TRIAL**

91. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

   a) Determining that Defendant negligently and/or willfully violated the FCRA;

   b) Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

   c) Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

   d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

//

Dated: February 7, 2023,   Respectfully submitted,
*/s/ Peter Cozmyk*
Peter Cozmyk (0078862)
*Of Counsel for Consumer Attorneys PLC*
**COZMYK LAW OFFICES, LLC**
6100 Oak Tree Blvd., Suite 200
Independence, OH 44131
T: (877) 570-4440
F: (216) 485-2125
E: pcozmyk@cozmyklaw.com

*Attorneys for Plaintiff
Hassan Ali Dahir*